IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CECIL LEE FLENNER, | CASE NO. 4:23-cv-2292 |
| Petitioner, | DISTRICT JUDGE |
| | DONALD C. NUGENT |
| vs. | |
| | MAGISTRATE JUDGE |
| WARDEN JAY FORSHEY, | JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Pro se Petitioner Cecil Lee Flenner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Flenner is in custody at the Noble Correctional Institution due to a journal entry of sentence in the case *State v. Flenner*, Trumbull County Court of Common Pleas, Case No. 16-CR-641. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eleventh Appellate District summarized the facts underlying Flenner's conviction as follows:

> {¶2} Appellant has been addicted to cocaine for twenty years. During most of that time, he has been close friends with Lisa Prater, a cocaine addict for over fifteen years. In the beginning, appellant's relationship with Prater was limited to using illegal drugs together. However, as the years went by, they began to live together at various locations in the Warren, Ohio area. Usually, their living arrangements would only last for a few months, and they would then go their separate ways. Nevertheless, their friendship endured.

> {¶3} At some point in 2013, Prater was convicted of cocaine possession, a fifth-degree felony. As a result of this conviction, Prater became motivated to "beat" her addiction. Over the ensuing three years, she remained "clean" and began attending church as often as she could. With assistance from her parents, she was also able to purchase a trailer, located near her church in the Warren area.

> {¶4} During the course of her rehabilitation, Prater maintained her friendship with appellant. Furthermore, during certain periods in which appellant was able to stop taking illegal drugs, Prater allowed him to reside with her. One such period began in June 2016, when he moved into her trailer. But, despite the closeness of their relationship, the parties had an agreement that their cohabitation would end if appellant started using cocaine again.

> {¶5} This period of cohabitation lasted for approximately two months. In early August 2016, appellant began a serious cocaine binge and immediately removed most of his belongings from the trailer. Since Prater felt that she must end her friendship with appellant due to his inability to remain sober, she required him to leave his key to the trailer with her.

2

{¶6} In the days following their breakup, Prater believed that appellant was stalking her by driving around the general area near her trailer. She also believed that, on one occasion, he broke into the trailer through a window and stole some small items. Consequently, her father and a church friend inserted additional screws through each of her window frames so that the windows could not be pried open. They also installed two new locks on her front door.

{¶7} According to Prater, on the morning of August 25, 2016, she observed appellant sitting in his truck near her trailer, looking at her through a window as she had a cup of coffee. In response, she called his probation officer to report his behavior. But, after a few moments, appellant drove away from the trailer, and Prater did not have any further contact with him that day. At approximately 10:00 p.m., she took her daily medications and went to bed. Due to the nature of her pills, she was a sound sleeper.

{¶8} According to appellant, he stopped at the trailer that morning because he wanted to tell Prater that he had decided to straighten up his life. Under his version, they had an amicable conversation about the situation, and Prater told him that he could come back that evening. She also allegedly gave him a new key to the front door. Yet, although appellant intended to come back later that day, he was delayed because he had an opportunity to smoke crack cocaine. Thus, he did not return to the trailer until 1:00 a.m. on August 26.

{¶9} There is no dispute that upon his return, appellant parked his truck in the parking lot of a nearby church, walked across a field to Prater's trailer, and smashed one of her windows with a crowbar. After that, the two versions of the ensuing events vary greatly. According to Prater, appellant terrorized her during the next few hours by committing the following acts: hitting her with his fist in the face and chest, threatening to kill her,

3

raping her, choking her until she was rendered
unconscious for a short period, and forcing her to
take a shower. According to him, Prater willingly let
him into the trailer after hearing him smash the
window, and they had consensual sex. Later, they
had a physical altercation when Prater became
jealous after he received a telephone call from a
female cocaine user. During that altercation, he
slapped Prater's face with his open hand.

{¶10} There is likewise no dispute that appellant was
high on cocaine during the entire event. At
approximately 5:00 a.m., he passed out on the living
room couch, and Prater immediately called the local
police. Meeting the responding police officers in the
driveway to her trailer, she quickly informed them
that appellant had broken into her residence and
raped her. The officers observed that Prater
appeared frightened and had multiple bruises on her
face and neck. After speaking to the officers, she was
taken by ambulance to a local hospital.

{¶11} In addition to Prater's allegations, the officers
learned over their radios that there was an
outstanding warrant for appellant's arrest.
Accordingly, appellant was immediately taken into
custody.

{¶12} At the hospital, a sexual assault nurse
examined Prater. As part of the procedure, the nurse
took Prater's statement concerning the rape and
documented the injuries to her face, neck, chest, and
left knee. Although Prater's genitals were examined,
no trauma or DNA evidence was found in this part
of her body. However, subsequent tests of Prater's
night shirt revealed the presence of seminal fluid,
and appellant's DNA was found on the same item.

*** 

{¶14} At trial, Prater testified that the following
occurred after appellant entered the trailer: (1) she
initially woke up because someone was laying on top
of her and hitting her in the head; (2) she did not

4

know who her attacker was until he got up and turned on the light, whereupon she saw it was appellant; (3) he was holding a crowbar and threatening her, stating he was going to kill her by crushing her skull; (4) appellant took possession of Prater's cell phone before waking her; (5) he continued to threaten her for a substantial period, during which he twice went into the kitchen for water and food; (6) after threatening her with a knife he got from the kitchen, he left her bedroom and went to the laundry room to get bleach to pour on her clothes; (7) at that point, Prater tried to escape by running to the front door; (8) appellant caught her by the door and dragged/pushed her back to the bedroom; (9) after pushing her onto the bed, he took off Prater's night clothes and forced her to engage in oral and vaginal sex; (10) appellant punched her and held her around the throat while raping her; (11) at the end of the vaginal sex, he ejaculated on Prater's stomach; (12) he again told her that he was going to kill her, grabbed her by the throat, and then choked her until she lost consciousness; (13) when Prater woke, appellant was dressed and walking down the hallway; (14) she put her night shirt on and started to follow him; (15) at that juncture, he ordered her to take a shower so that there would be no evidence of the rape; (16) she got into the shower and let the water run over her, but did not use soap; (17) after the shower, appellant got a telephone call which changed his attitude, and he began to act as if nothing had happened; (18) he told Prater he was leaving, but he passed out before making it to the front door; and (19) she called 9–1–1 with a spare cell phone she kept hidden in her bedroom.

{¶15} Appellant testified on his own behalf, stating that, even though he used the crowbar to br[eak] the window, Prater still willingly allowed him into her residence and they had consensual sex. Although he admitted he slapped Prater during a physical altercation, he claimed this did not occur until after they had sex and was instigated when Prater became jealous about a phone call he received from another female.

*State v. Flenner,* No. 2017–T–54, 2018 WL 1382365, at *1–3 (Ohio Ct. App. March 29, 2018).

### Procedural background

*Trial court proceedings*

In October 2016, the Trumbull County Grand Jury issued an indictment charging Flenner with two counts of aggravated burglary (counts one and two); two counts of rape (counts three and four); one count of kidnapping (count five); one count of domestic violence (count six); and one count of tampering with evidence (count seven). Doc. 7-2, at 6–11 (Exhibit 1).[1] Flenner pleaded not guilty. *Id.* at 12 (Exhibit 2).

Due to Flenner's attorney filing a motion to withdraw as counsel, the trial court tolled Flenner's speedy trial time from October 24, 2016, through November 14, 2016. Doc. 7-2, at 13 (Exhibit 3). On November 28, 2016, Flenner, through new counsel, executed a waiver of his speedy trial rights for 100 days, and trial was set for March 27, 2017. *Id.* at 14 (Exhibit 4). The trial started on March 28, Doc. 10-2, at 2, and the jury found Flenner guilty as charged, Doc. 7-2, at 15–21. (Exhibit 5).

The trial court held a sentencing hearing. Doc. 10-2, at 728. The court merged the two burglary counts and found that none of the other counts were allied offences subject to merger. Doc. 7-2, at 23. The court sentenced Flenner

---

[1]	In this report and recommendation, all of the citations to the docket refer to the ECF document and page number shown at the top of the page.

on each of the counts; ordered some of the sentences to run concurrently and some of them to run consecutively; and sentenced Flenner to an aggregate term of 35 years in prison. *Id.* at 23–24.

*Direct appeal*

Flenner, through new counsel, appealed to the Ohio court of appeals. Doc. 7-2, at 26 (Exhibit 7). In his brief, he raised the following assignments of error:[2]

> 1. The state failed to produce evidence that was legally sufficient to sustain the jury's verdict that appellant tampered with evidence.
>
> 2. The jury's verdict of guilty on the counts of aggravated burglary was against the manifest weight of the evidence.
>
> 3. The jury's verdict of guilty on the counts of rape was against the manifest weight of the evidence.
>
> 4. The jury's verdict of guilty on the count of kidnapping was against the manifest weight of the evidence.
>
> 5. The jury's verdict of guilty on the count of tampering with evidence was against the manifest weight of the evidence.
>
> 6. The trial court erred when it failed to merge the kidnapping count with an allied offense.

*Id.* at 39–41 (Exhibit 8). On March 19, 2018, the Ohio court of appeals affirmed the trial court's judgment. *Id.* at 79–94 (Exhibit 10).

---

[2] In this report and recommendation, Flenner's grounds for relief are reproduced as written.

7

*Delayed appeal to the Ohio Supreme Court*

On May 25, 2018, Flenner filed in the Ohio Supreme Court a pro se motion for leave to file a delayed appeal, Doc. 7-2, at 95 (Exhibit 11), and a notice of appeal, *id*. at 122 (Exhibit 12). On July 11, 2018, the Ohio Supreme Court denied Flenner's motion for a delayed appeal and dismissed his case. *Id*. at 124 (Exhibit 13).

*Petition to vacate or set aside judgment of conviction or sentence*

On July 13, 2018, Flenner filed in the trial court a pro se petition to vacate or set aside judgment of conviction or sentence. Doc. 7-2, at 125 (Exhibit 14). In his petition, Flenner raised the following claim:

> 6th Amendment Assistance of Counsel, a fair trial, and due process under the 14th Amendment
>
> *Supporting Facts*: I did not get a fair trial and due process because counsel did not bring forth testimony from a psychiatrist or expert to conduct a competency hearing on the state's witness. She is diagnosed with Schizoaffective Disorder.

*Id*. at 127. In response, the State filed a motion for summary judgment. *Id*. at 136 (Exhibit 15). On July 20, 2018, the court granted the State's motion and dismissed Flenner's petition. *Id*. at 148–51 (Exhibit 16). The court found that Flenner's claim was barred by res judicata because he should have raised it on direct appeal, and that it also failed on the merits because it lacked evidentiary support. *Id*.

On January 10, 2022, nearly three and a half years later, Flenner appealed to the Ohio court of appeals. Doc. 7-2, at 152 (Exhibit 17). The court

ruled that Flenner's appeal was timely because the record showed that the trial court failed to serve Flenner with its order denying the petition. *Id*. at 214 (Exhibit 20). Thereafter, Flenner filed his brief and raised the following assignments of error:

> 1. The trial court abused its discretion when he disposed of appellants postconviction petition based on an unreasonable determination of the facts in light of the evidence presented at trial.
>
> 2. Mis-application of res judicata.
>
> 3. Ineffective assistance of trial counsel. Trial counsel failed to call a clinical expert witness.
>
> 4. Compulsory process. In appellants original (PCR) he raises a colorable claim for due process violations.

Doc. 7-2, at 216, 221, 223 (Exhibit 21). On August 15, 2022, the Ohio court of appeals affirmed the trial court's dismissal of Flenner's petition. *Id*. at 372–76 (Exhibit 28).

In September 2022, Flenner appealed to the Ohio Supreme Court and filed a memorandum in support of jurisdiction raising the same claims as above. *Id*. at 379 (Exhibits 29, 30). On December 13, 2022, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Flenner's appeal. *Id*. at 422 (Exhibit 32).

*Ohio Appellate Rule 26(B) Application to Reopen*

On January 10, 2022, Flenner filed in the Ohio court of appeals an untimely Ohio Appellate Rule 26(B) Application to Reopen.[3] Doc. 7-2, at 423 (Exhibit 33). He argued that appellate counsel was ineffective for failing to raise on direct appeal the following errors:

> 1. Ineffective assistance of trial counsel: (a) Trial counsel failed to call clinical expert witness. (b) Trial counsel failed to object to the prosecutor presenting tainted evidence. (c) Trial counsel failed to calculate speedy trial day's.
>
> 2. Prosecutorial misconduct; producing tainted evidence.
>
> 3. Speedy trial violation.

*Id.* at 426–27. On January 20, 2022, the court denied Flenner's application as untimely. *Id.* at 451 (Exhibit 35).

*Delayed applications for reconsideration*

In April 2023, Flenner filed in the Ohio court of appeals three delayed applications for reconsideration. First, Flenner asked the court to reconsider its March 19, 2018 direct-appeal decision affirming his convictions. Doc. 7-2, at 452–53 (Exhibit 36). The basis for this motion was the Ohio Supreme Court decision in *State v. Pendleton*, 168 N.E.3d 458 (Ohio 2020), which, Flenner

---

[3]     A Rule 26(B) application to reopen is the method to raise ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B)(1). An application must be filed "within ninety days from journalization of the appellate judgment [on direct appeal] unless the applicant shows good cause for filing at a later time." *Id.*

believed, meant that his two rape counts should have been merged as allied offences. *Id.* at 454. Second, he asked the court to reconsider its January 20, 2022 decision denying his Rule 26(B) application to reopen. *Id.* at 455–56 (Exhibit 36-A). Third, he asked the court to reconsider its August 15, 2022 decision affirming the trial court's denial of his post-conviction petition. *Id.* at 515–16 (Exhibit 44). On May 18, 2023, the Ohio court of appeals overruled all three of Flenner's applications. *Id.* at 478–83, 530–32 (Exhibits 39, 39-A, 47).

Flenner appealed, Doc. 7-2, at 484–85, 533–34 (Exhibits 40–41, 48–49), and in August 2023, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Flenner's appeals, *id.* at 514, 558 (Exhibits 43, 51).

*Second direct-appeal delayed application for reconsideration*

In December 2023, Flenner filed in the Ohio court of appeals another application for delayed reconsideration of the court's March 19, 2018 direct-appeal decision affirming his convictions. Doc. 7-2, at 559 (Exhibit 52). Flenner argued that he should not have received consecutive sentences on his two rape convictions. *Id.* at 560. In January 2024, the Ohio court of appeals overruled Flenner's application. *Id.* at 569–71 (Exhibit 54).

In March, Flenner filed in the Ohio Supreme Court an untimely notice of appeal and motion for delayed appeal. Doc. 7-2, at 572–80 (Exhibits 55, 56). In April 2024, the Ohio Supreme Court denied Flenner's motion. *Id.* at 590 (Exhibit 58).

11

*Federal habeas corpus petition*

Flenner states that on November 16, 2023, he placed in the prison mailbox his federal habeas corpus petition under 28 U.S.C. § 2254.[4] Doc. 1, at 15. He raised the following grounds for relief:

> **Ground one**: No sufficient evidence exists for any forcible rape, restraint of liberty or tampering with evidence.
>
> **Ground two**: Double-jeopardy violation(s) in the form of failure to merge allied offenses of similar import &/or multiple like offenses.
>
> **Ground three**: Denial of effective assistance of appellate counsel.
>
> **Ground four**: Denial of effective assistance of trial counsel.
>
> **Ground five**: Denial of a fair and speedy trial.

Doc. 1, at 5–12. The Warden filed a Return of Writ, Doc. 10, and a Supplemental Return of Writ, Doc. 18. Flenner filed a Traverse to the Return, Doc. 15, and a Traverse to the Supplemental Return, Doc. 20.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural

---

[4]    A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902

13

F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent

14

and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been

established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at

231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

1. *Ground one is withdrawn.*

In ground one, Flenner argues that there was insufficient evidence "for any forcible rape, restraint of liberty or tampering with evidence." Doc. 1, at 5. The Warden asserts that ground one is procedurally defaulted. Doc. 10, at 14–15. In his Traverse, Flenner submits that ground one is "untenable," and "asks that this Court strike such claim." Doc. 15, at 2; *see also* Doc. 20 (Flenner's supplemental traverse excluding discussion of ground one). The Court, therefore, will consider ground one to have been withdrawn.[5]

2. *Ground two is procedurally defaulted.*

In ground two, Flenner argues that the trial court's failure to merge allied offences was a double jeopardy violation. Doc. 1, at 7. He contends that the kidnapping count should have merged with the rape and the tampering-with-evidence counts, and that the two rape counts should have merged with each other. *Id.* These two alleged double jeopardy violations are both procedurally defaulted, but for different reasons, explained below.

*The kidnapping count.* On direct appeal to the Ohio court of appeals, Flenner claimed that the kidnapping count should have merged with the rape

---

[5]    Even so, ground one would be procedurally defaulted for the same reason that Flenner's kidnapping claim in ground two is procedurally defaulted.

and tampering-with-evidence counts. Doc. 7-2, at 53–57. But Flenner didn't timely appeal to the Ohio Supreme Court. The Ohio court of appeals issued its decision on March 19, 2018. Doc. 7-2, at 79. Flenner had 45 days, until May 3, to appeal to the Ohio Supreme Court. *See* S.Ct.Prac.R. 7.01(A)(1)(a)(i) ("To perfect a jurisdictional appeal from a court of appeals to the Supreme Court … the appellant shall file a notice of appeal in the Supreme Court within forty-five days from the entry of the judgment being appealed."). Flenner filed in the Ohio Supreme Court a notice of appeal and a motion for leave to file a delayed appeal on May 25, three weeks late.

The Ohio Supreme Court denied Flenner's motion for leave to file a delayed appeal. Doc. 7-2, at 124. When it did, it enforced an adequate state procedural rule that is sufficient to bar federal habeas relief. *See Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 432 (6th Cir. 2006) (the Ohio Supreme Court's denial of a motion for delayed appeal, even when it did not give any reasons for the denial, "is an adequate procedural ground to foreclose federal habeas review") (citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)). So Flenner failed to comply with a state-court rule applicable to the claim, the Ohio Supreme Court enforced the procedural rule, and that procedural rule is an adequate and independent state ground on which the state can foreclose review of the claim. *See Maupin*, 785 F.2d at 138.

Flenner resists this conclusion. He argues that "because no merits are addressed in a motion for leave to the Ohio Supreme Court," his allied-offences

claim is not procedurally defaulted. Doc. 15, at 2. But it was Flenner's failure to timely raise this claim on direct appeal to the Ohio Supreme Court *and* the Ohio Supreme Court's subsequent denial of his motion for leave to file a delayed appeal to raise any claim that constitutes the procedural default. *See Williams*, 460 F.3d at 806 ("a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'") (quoting *O'Sullivan*, 526 U.S. at 847).

Flenner also argues that the *Maupin* test for procedural default is "outdated" and "uprooted," and that the adequacy question should be addressed under the rule established in "*Lee v. Kemna*, 543 U.S. 362, 375 (2002), as outlined in *Gibbs v. Huss*, 12 F.4th 544 (6th Cir. 2021)." Doc. 15, at 1. In *Gibbs*, the Sixth Circuit discussed the evolution of case law regarding the adequacy of the state procedural rule since *Maupin*:

> What constitutes an adequate procedural rule is a question of federal law. *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). A determination of adequacy "generally requires 'an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.'" *Clifton v. Carpenter*, 775 F.3d 760, 764 (6th Cir. 2014) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). And a rule may be inadequate for one of several reasons. First, if the rule violates the United States Constitution, it cannot "serve as an adequate basis for the state court's decision ... under the adequate and independent state ground doctrine." *Ibid.* (alteration in original) (quoting *Doan v. Brigano*, 237 F.3d 722, 727–28 (6th Cir. 2001), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)); *see also Richard H. Fallon*,

*Jr., et al., Hart and Wechsler's The Federal Courts and the Federal System* 535 (7th ed. 2015) ("[R]eview plainly cannot be foreclosed by a litigant's noncompliance with a state procedural rule that, on its face or as applied, violates the Due Process Clause.").

And an ordinarily adequate procedural rule may nevertheless be inadequate in "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee*, 534 U.S. at 376, 122 S.Ct. 877. The *Lee* Court drew from *Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). There, the Ohio Supreme Court had held that Mr. Osborne's constitutional objections to jury instructions were procedurally barred because he had "failed to object contemporaneously to the judge's charge." *Lee*, 534 U.S. at 376–77, 122 S.Ct. 877. But Mr. Osborne had already objected to one of the challenged instructions earlier in the proceedings, "and the trial judge, 'in no uncertain terms,' had rejected [his] argument." *Id*. at 377, 122 S.Ct. 877 (quoting *Osborne*, 495 U.S. at 124, 110 S.Ct. 1691). Thus, in that "atypical instance," in which a jury-instruction objection had already been made and decisively overruled, Ohio's enforcement of the contemporaneous-objection rule "serve[d] 'no perceivable state interest'" and was therefore inadequate to prevent Supreme Court review. *Id*. at 378, 122 S.Ct. 877 (quoting *Osborne*, 495 U.S. at 124, 110 S.Ct. 1691).

In *Lee*, three defense witnesses, who were to testify in support of the defendant's alibi, left the courthouse for an at-the-time-unknown reason. *Lee*, 534 U.S. at 369, 122 S.Ct. 877. (They later attested that an officer of the court had told them that "their testimony would not be needed that day." *Id*. at 373 & n.6, 122 S.Ct. 877.) Mr. Lee orally moved the trial court for a "continuance until the next morning, to gain time to enforce the subpoenas he had served on the witnesses." *Id*. at 369, 122 S.Ct. 877. The trial judge denied the motion because he could not hold

21

court the next day—his daughter would be in the hospital, and he would have to attend to her. *Ibid*. The court also denied a continuance until the next week because there was another case set for trial. *Id*. at 370, 122 S.Ct. 877. Mr. Lee argued on appeal that the trial court had denied him his right to present a defense. *Id*. at 371, 122 S.Ct. 877.

In its appellate brief, the state raised for the first time that Mr. Lee's motion was improper because it did not satisfy Missouri Supreme Court Rule 24.10 (requiring certain factual showings be made in an application for a continuance). *Lee*, 534 U.S. at 371–72, 122 S.Ct. 877. In its opinion denying relief, the state court of appeals raised on its own a separate procedural rule, Missouri Supreme Court Rule 24.09 (requiring an application for a trial continuance be made on a written motion with an affidavit). *Lee*, 534 U.S. at 372–73, 122 S.Ct. 877. According to Missouri, those two rules "work together to enhance the reliability of a trial court's determination of whether to delay a scheduled criminal trial due to the absence of a witness." *Id*. at 380, 122 S.Ct. 877 (emphasis omitted) (quoting Brief for Respondent at 29, *Lee*, 534 U.S. 362, 122 S.Ct. 877 (No. 00-6933)). But "neither the prosecutor nor the trial judge so much as mentioned the Rules as a reason for denying Lee's continuance motion." *Ibid*.

In finding the Missouri rules inadequate to support a procedural default, the Court observed that the state had presented no case law for the proposition that "flawless compliance" with the rules was required "in the unique circumstances" presented—namely, "the sudden, unanticipated, and at the time unexplained disappearance of critical subpoenaed witnesses on what became the trial's last day." *Id*. at 382, 122 S.Ct. 877. Also important to the Court's decision was that there was no evidence that "formally perfect compliance with the Rules would have changed the trial court's decision." *Id*. at 387, 122 S.Ct. 877. And, as the Court noted, if the procedural default were upheld, it would not have mattered even if the witnesses truly had been told to

22

> leave "on the instigation of a prosecutor who knew the judge would be at the hospital with his daughter the next day." *Ibid*. The Court rejected a doctrine under which a "particular application [of the Missouri Rule], never mind how egregious, would be ignored so long as the Rule, like the mine run of procedural rules, generally serves a legitimate state interest." *Ibid*.

*Gibbs*, 12 F.4th at 550–52.

Here, Flenner hasn't shown that Ohio Supreme Court's denial of his delayed motion to appeal "is novel or inconsistently applied by the state's courts." *See Gibbs*, 12 F.4th at 551; *cf. Smith*, 463 F.3d at 431–32 ("We have previously held that [the Ohio Supreme Court's] denial of review on the basis of Rule II § 2(A)(4)(a) is an adequate procedural ground to foreclose federal habeas review.").[6] Flenner hasn't shown that his is an "exceptional case[] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *See Gibbs*, 12 F.4th at 551 (quoting *Lee*, 534 U.S. at 376). Rather, Flenner's case is the run-of-the-mill situation in which a petitioner fails to timely appeal to the Ohio Supreme Court and the Ohio Supreme Court rejects the petitioner's attempt to file a delayed appeal. *See Smith*, 463 F.3d at 431–32; *Bonilla*, 370 F.3d at 497; *Davenport v. Fender*, No. 1:20-cv-0561, 2023 WL 1785492, at *13 (N.D. Ohio Jan. 5, 2023),

---

[6]     The rules were renumbered in 2013, and Ohio Supreme Court Rule of Practice 2.2(A)(4) became 7.01(A)(1)(a)(i). *See Brown v. Ohio Dep't of Rehab. & Corr.*, No. 3:12-cv-530, 2013 WL 1562909, at *1 (N.D. Ohio Apr. 15, 2013).

23

*report and recommendation adopted*, 2023 WL 1782121 (N.D. Ohio Feb. 6, 2023).

Flenner has not asserted cause or prejudice to excuse his procedural default, or shown that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see Schlup v. Delo*, 513 U.S. 298, 324 (1995) (a claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.").

*The rape counts*. On direct appeal, Flenner didn't argue that his two rape counts were allied offences. Flenner first raised this claim to the Ohio court of appeals in April 2023, under Ohio Appellate Rules 26(A) and 14(B) in a delayed application for reconsideration of the court's March 2018 direct-appeal decision. Doc. 7-2, at 452–54. In his application, Flenner argued that in *State v. Pendleton*, 168 N.E.3d 458 (Ohio 2020), the Ohio Supreme Court "announced a 'new' rule of law" which meant that his two rape counts "must be considered a single offence." Doc. 7-2, at 454.

But the Ohio court of appeals rejected Flenner's untimely application. *Id*. at 479–80. The court stated that Ohio Appellate Rule 25(A)(1) "allows parties ten days to file an application for reconsideration," a time-period which Flenner's 2023 application challenging the court's 2018 decision clearly fell

24

outside of. *Id*. at 479. The court commented that Appellate Rule 14(B) permitted the court "[f]or good cause shown" to "enlarge or reduce the time prescribed by these rules … on a showing of extraordinary circumstances." *Id*. The court explained that "extraordinary circumstances" was defined as "[s]ubsequent binding higher court decisions directly on point with the underlying appellate decision." *Id*. The court reasoned:

> Appellant argues *Pendleton*, *supra*, addressed R.C. 2941.25, Allied Offenses of Similar Import. He contends, based on the holding in *Pendleton*, his two rape counts must be considered as a single offense and he must be resentenced accordingly. The State, in opposition to appellant's application, argues that *Pendleton* is not on point and therefore does not create an obvious error in our underlying appellate decision.
>
> In *Pendleton*, the Ohio Supreme Court addressed whether R.C. 2925.03, Trafficking in Drugs, allowed the weight of a mixture of drugs to be multiplied by the number of controlled substances detected in the mixture in order to support multiple punishments. *Id*. at ¶12. The court determined the matter based on the "plain terms" of RC. 2925.03 and found R.C. 2941.25, Allied Offenses of Similar Import, did not apply to the case at all. *Id*. Therefore, *Pendleton* is neither binding nor on point and appellant has failed to demonstrate any obvious error in our opinion.

Doc. 7-2, at 479–80.

When it rejected as untimely Flenner's application, the Ohio court of appeals enforced an adequate state procedural rule that is sufficient to bar federal habeas relief. *See Ysreal v. Warden, Chillicothe Corr. Inst.*, No. 1:13-cv-34, 2014 WL 7185264, at *9 (S.D. Ohio Dec. 16, 2014) (petitioner's claim was

procedurally defaulted when the Ohio court of appeals rejected as untimely the petitioner's delayed motion for reconsideration) (citing cases); *Shephard v. Warden*, No. 1:10-cv-222, 2011 WL 3664442, at \*13 (S.D.Ohio May 31, 2011) ("It was well-established even before … 1993 that applications for reconsideration filed after the requisite ten-day period set forth in Ohio R. App. P. 26(A) were subject to dismissal absent a showing under Ohio R. App. P. 14(B) of good cause sufficient to excuse the untimely filing"), *report and recommendation adopted*, 2011 WL 3652615 (S.D.Ohio Aug. 8, 2011)). So Flenner failed to comply with a state-court rule applicable to his claim, the Ohio court of appeals enforced the procedural rule, and that procedural rule is an adequate and independent state ground on which the state can foreclose review of the claim.[7] *See Maupin*, 785 F.2d at 138.

Flenner also raised his allied-offences-of-rape claim in a second application for delayed reconsideration, this time relying on *State v. Gwynne*, 231 N.E.3d 1109 (Ohio 2023). *See* Doc. 7-2, at 560–61. Flenner argued that in *Gwynne*, the Ohio Supreme Court held that "an appellate court may otherwise

---

[7]     In his supplemental traverse, Flenner advances a new argument: that "[b]efore *Pendleton*, O.R.C. §2941.25 was the touchstone applied to all challenges on allied offenses of similar import and, now, it is understood that it is but one starting point towards answering the constitutional question of legislative intent." Doc. 20, at 2. But the court in *Pendleton* cited *State v. Brow*n, 895 N.E.2d 149, 156 (Ohio 2008), when it explained that "if the General Assembly's intent is clear from the language of the offense, there is no need to resort to the test provided in R.C. 2941.25." 168 N.E.3d at 462. He asserts that *Pendleton* was "on-point," Doc. 20, at 2, but the Ohio court of appeals reasonably found otherwise, Doc. 7-2, at 479–80.

modify a sentence when, in consideration of the trial court's findings, it determines the record does not clearly and convincingly support the findings." *Id.* at 560. He alleged that in his case, "the aggregate [prison] term represents an 'extreme sentence[] that [is] "grossly disproportionate" to the crime[s]'" because "[t]he legislature has not made oral and vaginal rape of the same woman susceptible to cumulative punishment." *Id.*

The Ohio court of appeals noted that Flenner's application was untimely and considered whether under Ohio Appellate Rule 14(B) he showed the requisite "extraordinary circumstances" for the court to consider his late application. Doc. 7-2, at 570. In deciding that Flenner had not done so, the court explained:

> Appellant argues that the Ohio Supreme Court's opinion in *State v. Gwynne*, Slip Opinion, 2023-Ohio-3851, creates an obvious error in his sentencing which warrants reconsideration. He asserts that the legislature has not made oral and vaginal rape of the same person susceptible to cumulative punishment and that his aggregate prison term for both oral and vaginal rape is grossly disproportionate to his crimes. He asserts that the holding in *Gwynne*, 2023-Ohio-3851 allows this Court to modify his sentence because the record does not clearly and convincingly support his sentencing.
>
> However, *Gwynne*, 2023-Ohio-3851 was a reconsideration opinion of *State v. Gwynne*, Slip Opinion, 2022-Ohio-4607, and essentially reset consecutive sentencing jurisprudence to the state it existed prior to the December 23, 2022 *Gwynne* 2022-Ohio-4607 decision. *Gwynne*, 2023-Ohio[-]3851 said under the plain language of R.C. 2953.08(G)(2) an appellate court may not substitute its own judgment for that of the trial court imposing sentencing unless

27

the record does not clearly and convincingly support the trial court's consecutive sentence findings. *Id*. at ¶13-15, citing R.C. 2953.08(G)(2).

Appellant's argument fails to identify how the trial court record does not support the consecutive sentence findings, cites no support for his proposition that vaginal and oral rape of the same person is not susceptible to consecutive sentencing, and is a misrepresentation of the holding in *Gwynne*. Appellant has not demonstrated any obvious error in this Court's decision and thus there are no "extraordinary circumstances warranting the enlargement of the time for filing application for reconsideration***." [*State v.*] *Moore*, [76 N.E.3d 1127 (Ohio 2013)] *supra*, at ¶95.

Doc. 7-2, at 570–71.

Flenner argues that the Ohio court of appeals' decision was "novel or inconsistent with *State v. Moore.*" Doc. 20, at 3. In *Moore*, the Ohio Supreme Court considered whether the defendant showed under Ohio Appellate Rule 14(B) "extraordinary circumstances" to warrant reconsideration under Ohio Appellate Rule 26(A) of his claim. 76 N.E.3d at 1147. It held that the defendant had done so based on an intervening, binding, on-point United States Supreme Court case, *Graham v. Florida*, 560 U.S. 48 (2010). *Id*. at 1149. In *Graham*, the Court held that a state violates the Eighth Amendment of the United States Constitution if it sentences a juvenile to life imprisonment without the possibility of parole on a non-homicidal offence. 560 U.S. at 79. In *Moore*, the Ohio Supreme Court held that for a juvenile convicted of a non-homicidal offence, there was no distinction between a life sentence without the possibility

of parole, as in *Graham*, and a term-of-years sentence that exceeded the juvenile's life expectancy, as in *Moore*. *Moore*, 76 N.E.3d at 1137, 1139.

Here, Flenner hasn't identified an intervening, binding, on-point case that applies to his claim that his rape convictions should have merged. So he hasn't shown that the Ohio court of appeals' decision was "novel" or "inconsistent" with Ohio courts' applications of the time-bar in Ohio Appellate Rule 14(B) when evaluating under Ohio Appellate Rule 26(A) a motion for delayed reconsideration. Simply put, Flenner failed to comply with a state-court rule applicable to his claim, the Ohio court of appeals enforced the procedural rule, and that procedural rule is an adequate and independent state ground on which the state can foreclose review of the claim. *See Maupin*, 785 F.2d at 138; *see also Ysreal*, 2014 WL 7185264, at *9; *Shephard*, 2011 WL 3664442, at *13.

Flenner also procedurally defaulted his claim based on *Gwynne* because he failed to timely appeal to the Ohio Supreme Court, and the Ohio Supreme Court rejected his motion for delayed appeal. Doc. 7-2, at 572, 590; *see Bonilla*, 370 F.3d at 497 (when the Ohio Supreme Court denies a motion for delayed appeal, it enforces a procedural bar that precludes federal habeas review).

As above, Flenner has not alleged cause, prejudice, or actual innocence to excuse his procedural defaults. Ground two is procedurally defaulted.

3.  *Ground three is procedurally defaulted.*

In ground three, Flenner argues that appellate counsel was ineffective for failing to raise on direct appeal ineffective-assistance-of-trial-counsel claims for counsel's failure to call an expert witness, object to tainted evidence, and move for dismissal on speedy trial grounds. Doc. 1, at 8.

Flenner raised these claims in his January 2022 Rule 26(B) application to reopen. Doc. 7-2, at 426–27. But any Rule 26(B) application was due 90 days after the March 2018 Ohio court of appeals' decision affirming Flenner's convictions. *See* Ohio App. R. 26(B)(1); Doc. 7-2, at 79. The Ohio court of appeals denied as untimely Flenner's Rule 26(B) application and commented that it was "over three and one-half years" late. *Id*. at 451. So Flenner procedurally defaulted ground three. *See Parker v. Bagley*, 543 F.3d 859, 861–62 (6th Cir. 2008) (claims raised in a Rule 26(B) application that the Ohio court of appeals rejects as untimely are procedurally defaulted); *Monzo v. Edwards*, 281 F.3d 568, 577–79 (6th Cir. 2002). Flenner contends that "[t]here is no consistency in the application of App. R. 26(B)(1) and, as such, it cannot be used to preclude the federal questions." Doc. 20 at 4. But case law says otherwise. *See Parker*, 543 F.3d at 861–62.

In April 2023, Flenner filed an untimely delayed application for reconsideration, asking the Ohio court of appeals to reconsider its January 2022 decision overruling his Rule 26(B) application to reopen. Doc. 7-2, at 455–57. He cited case law that, he believed, advanced his argument about the

timeliness of his Rule 26(B) application. *Id*. The Ohio court of appeals rejected

as untimely Flenner's delayed application, and explained:

> Appellant argues that [*State v.*] *Bethel*, [192 N.E.3d
> 470 (Ohio 2022)], warrants reconsideration of our
> denial of his Delayed Application for Reopening
> because the Ohio Supreme Court recently held that
> there is no "reasonable time" requirement to file a
> motion for new trial. *Id*. at ¶51–58. However, *Bethel*
> dealt with the timeliness of a motion for a new trial,
> not a delayed application for reopening of a direct
> appeal under App. R. 26(B). *Bethel* at ¶48. This case
> is not on point and does not demonstrate any obvious
> error in our judgment denying his Delayed
> Application for Reopening his direct appeal.

*Id*. at 482–83.[8] So Flenner's untimely delayed application for reconsideration

does not save from procedural default ground three. *See Maupin*, 785 F.2d at

138; *see also Ysreal*, 2014 WL 7185264, at *9; *Shephard*, 2011 WL 3664442, at

*13. And Flenner hasn't shown cause, prejudice, or actual innocence to

overcome the procedural bar.

> ### 4. *A portion of ground four is procedurally defaulted and the remainder is not cognizable and fails on the merits.*

In ground four, Flenner argues that trial counsel was ineffective for

failing to: call a clinical expert witness; "object to the prosecution's

presentation of false, tainted evidence"; move for dismissal based on a violation

---

[8] The *Bethel* court evaluated Ohio Criminal Rule 33(B), which "does not establish a time frame in which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence." 192 N.E.3d at 483. Ohio Appellate Rule 26(B), on the other hand, expressly establishes a time-frame in which a defendant must file an application to reopen. *See* Ohio App. R. 26(B)(1).

of Flenner's right to a speedy trial, and "created a structure where [Flenner] was denied any defense, even that of an affirmative defense." Doc. 1, at 10.

> ### 4.1 The "false, tainted evidence" and speedy trial sub-claims are procedurally defaulted.

Although Flenner raised ineffective-assistance-of-trial-counsel claims in his postconviction petition, he didn't cite the failure to object to "false, tainted evidence" or a speedy trial violation as reasons that he believed counsel was ineffective. *See* Doc. 7-2, at 127 (postconviction petition); 216–24 (appellate brief). So Flenner has not fairly presented these claims, and they are procedurally defaulted. *See Wong v. Money*, 142 F.3d 313, 321–22 (6th Cir. 1998) (ineffective-assistance-of-counsel claim based on different reasons than those alleged in state court is procedurally defaulted; "[t]his circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court").

Flenner argues that these claims were raised in his Rule 26(B) application to reopen.[9] Doc. 15, at 3. But Flenner's Rule 26(B) application to reopen raised ineffective-assistance-of-appellate-counsel claims, not ineffective-assistance-of-trial-counsel claims. Doc. 7-2, at 426–27. "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas

---

[9]      In his traverse to the Warden's Supplemental Return, Flenner "concedes that the pertinent claim here is the failure to call an expert witness to admit medical records." Doc. 20, at 5.

review because 'the two claims are analytically distinct.'" *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)). And Flenner's Rule 26(B) application to reopen was rejected as untimely, so any ineffective-assistance-of-appellate-counsel claim is itself procedurally defaulted and could not serve as cause to excuse a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000) (ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective-assistance-of-appellate-counsel claim is not itself procedurally defaulted and the court finds that appellate counsel was constitutionally ineffective).

> *4.2 Failure to call a "clinical expert witness" that "created a structure where [Flenner] was denied any defense, even that of an affirmative defense," is not cognizable and fail on the merits.*

In his post-conviction petition, Flenner alleged that trial counsel was ineffective for not hiring an expert "to conduct a competency hearing on the state's witness." Doc. 7-2, at 127. The trial court rejected his claim, finding that it was barred by res judicata, and that it also failed on the merits. *Id.* at 149. As for the merits, the trial court explained that:

> 4. The victim in this case, Lisa Prater, is a middle aged woman. Consequently, she was presumed competent to testify. Nothing occurred before, during, or after trial that indicates that Ms. Prater was incapable of correctly stating or recalling the matters to which she testified. The Court is further satisfied that Ms. Prater fully understood the nature and obligations of the oath which was administered.

> 5. The issue of Ms. Prater's competency was never
> raised, by anyone, prior to the instant Motion.
>
> 6. The instant petition, lack of supporting affidavits,
> zero documentary evidence, and the trial record as a
> whole, do not demonstrate sufficient operative facts
> to establish substantive grounds for relief.

Doc. 7-2, at 149–150. When Flenner appealed, he expanded his claim. He

alleged that:

> 1. The trial court abused its discretion when [it]
> disposed of appellant's postconviction petition based
> on an unreasonable determination of the facts in
> light of the evidence presented at trial.
>
> 2. mis-application of res judicata.
>
> 3. Ineffective Assistance of Trial Counsel. Trial
> counsel failed to call a clinical expert witness: the
> record reflects that throughout the trial a major
> issue was evident regarding Ms. Prater's
> competence; in reference to her being diagnosed with
> schizoeffective disorder. The issue was so obvious
> and significant that it effectuated multiple side bars.
>
> 4. Compulsory Process. In appellants original (PCR)
> he raises a colorable claim for due process violations.
> Its clear that trial counsel was privy to the fact of
> Ms. Prater's mental disorder and through the
> proceedings the prosecutor and the judge did
> everything in their power to keep this crucial factor
> concealed. By doing so all parties created a
> structu[r]al erosion that can only be cured by a new
> trial.

*Id*. at 216, 221–23.

The Ohio court of appeals consolidated as related Flenner's claims, Doc.

7-2, at 373, and rejected them as follows:

34

{¶5} "Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" "may file a postconviction relief petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief[.]" R.C. 2953.21(A)(1)(a)(i).

{¶6} "*Before granting a hearing on a petition filed under division (A)(1)(a)(i) * * * of this section, the court shall determine whether there are substantive grounds for relief.*" (Emphasis added.) R.C. 2953.21(D). "In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." *Id.* "If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal." *Id.* "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending." R.C. 2953.21(F).

{¶7} We review a trial court's decision on a postconviction petition for an abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. "[A]n abuse of discretion is the trial court's '"failure to exercise sound, reasonable, and legal decision-making."'" *Ivancic v. Enos*, 2012-Ohio-3639, 978 N.E.2d 927, ¶ 70 (11th Dist.), quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8 Ed.2004). "'Absent a showing of abuse of discretion, a reviewing court will not overrule the trial court's finding on a petition for postconviction relief which is supported by

competent and credible evidence.'" *Gondor* at ¶ 50, quoting *State v. Mitchell*, 53 Ohio App.3d 117, 119, 559 N.E.2d 1370 (8th Dist.1988).

{¶8} In his petition, Flenner claimed he was denied the effective assistance of counsel because his trial counsel failed to bring forth expert testimony or request a competency hearing on the state's victim witness, whom Flenner alleges suffers from schizoaffective disorder.

{¶9} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. The defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

{¶10} "To warrant an evidentiary hearing in a postconviction proceeding, a petitioner must submit evidence outside the record that sufficiently establishes that the petitioner is entitled to relief on one or more asserted constitutional grounds." (Citations omitted.) *State v. Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶29. "Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was

36

prejudicial to the defendant." (Citations omitted.) *State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982).

{¶11} Flenner presented his claim for ineffective assistance of trial counsel as follows:

> I did not get a fair trial and due process because counsel did not bring forth testimony from a psychiatrist or expert to conduct a competency hearing on the state's witness. She is diagnosed with schizoaffective disorder.

> Exhibit 1, a definition of schizoaffective disorder, symptoms of the illness, treatment, and other related conditions. I will show in her past medical records where she has already been diagnosed with this mental illness. I will also show in the transcripts where she states several symptoms and that she belongs to Coleman Behavioral and is under a physician for care.

> Evidence supporting this claim is not attached because Petitioner needs the assistance of an attorney, investigator, psychologist and/or psychiatrist to produce the evidence. (See Petitioner's Motions for Expert Assistance and for Appointment of Counsel, filed with this petition.)

{¶12} In support of his petition, Flenner attached "Exhibit 1," which is a handwritten four-page list, without references or sources, of the symptoms, diagnosis, and treatment of schizoaffective disorder. Flenner also filed a motion for expert assistance from a psychiatrist, in which he cites to multiple Ohio cases where there was testimony that a witness had schizoaffective disorder. Flenner then states that the victim witness in his case exhibits the same

symptoms as those described.

{¶13} Flenner provides no support for trial counsel's alleged deficiency or prejudice resulting from trial counsel's performance. Rather, he offers nothing more than his personal opinion that the victim's trial testimony is evidence that she suffers from a mental illness. And, although he requested the trial court to provide him with expert assistance, he is not entitled to such assistance in postconviction proceedings. *State v. Jackson*, 11th Dist. Trumbull No. 2004-T-0089, 2006-Ohio-2651, ¶24 ("since a proceeding under R.C. 2953.21 is considered civil, there is no constitutional right to expert assistance"). Accordingly, Flenner has failed to demonstrate sufficient operative facts to establish substantive grounds for relief. As this basis alone is sufficient to affirm the trial court's decision to dismiss the petition without a hearing, we need not address Flenner's res judicata argument.

{¶14} Flenner's assignments of error are without merit. The trial court's dismissal of Flenner's postconviction relief petition is affirmed.

*State v. Flenner*, No. 2022-T-0003, 2022 WL 3349242, at *1–3 (Ohio Ct. App. August 15, 2022).

Flenner argues that the Ohio court of appeals misapplied the post-conviction statute when it denied him a hearing. Doc. 20, at 5. But such a claim is not cognizable because habeas corpus cannot be used to challenge errors or deficiencies in state post-conviction proceedings. *See Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986).

That leaves Flenner's claim that trial counsel was ineffective for failing to call an expert witness. Doc. 1, at 10. A successful ineffective-assistance claim requires a petitioner to demonstrate that: (1) "counsel's performance was

deficient"; and (2) "the deficient performance prejudiced the defense." *Jones v. Bradshaw*, 46 F.4th 459, 487–88 (6th Cir. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first prong is satisfied when a petitioner 'show[s] that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Jones*, 46 F.4th at 487 (quoting *Strickland*, 466 U.S. at 694). "The second prong is satisfied when the petitioner 'show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones*, 46 F.4th at 487–88. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jones*, 46 F.4th at 488 (quoting *Strickland*, 466 U.S. at 694). The combined effect of *Strickland* and 28 U.S.C. § 2254(d) is "'doubly deferential'" review. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "When 2254(d) applies, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105; *Foust v. Houk*, 655 F.3d 524, 533–34 (6th Cir. 2011). "Or, in more concrete terms, a federal court may grant relief only if *every* '"fairminded juris[t]"' would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (quoting *Harrington*, 562 U.S. at 101).

*Strickland* commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689–90; *Pinholster*, 563 U.S. at 196 ("[t]he Court of Appeals was required not simply to 'give [the] attorneys the benefit of the doubt,' but to affirmatively entertain the range of possible 'reasons *Pinholster's* counsel may have had for proceeding as they did'") (citation omitted).

Here, the Ohio court of appeals recited the correct, *Strickland* standard. *Flenner*, 2022 WL 3349242, at *2. Flenner hasn't shown that the court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103; *see Dunn*, 594 U.S. at 739 ("The burden of rebutting this [*Strickland* and AEDPA] presumption" on a claim that counsel should have hired an expert "'rests squarely on the defendant,' and '[i]t should go without saying that the absence of evidence cannot overcome [it].'") (quoting *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013)); *see also Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015) ("The Supreme Court has never reached the specific question[] … [of] how hard" an attorney must try to obtain an expert).

Flenner's ineffective-assistance claim fails on the merits.

### 4.3 Expanding the record

Flenner had asked the Court to expand the record to add "State's Exhibit #51," which he says is the "[p]rior medical history" of the victim. Doc. 8, at 3. I

had denied his request, but stated that, "[i]f, on full petition review, Flenner's ineffective-assistance claim" for failing to call an expert in ground four "is not procedurally defaulted, the Court will re-evaluate this request." Doc. 17, at 2–3. Because Flenner's claim is not procedurally defaulted, I will re-evaluate his request.

State's Exhibit 51, the victim's hospital exam record, was discussed at trial, *see* Doc. 10-2, at 291, 309–13, 407–10, 441–44, 673, and admitted into evidence, *id.* at 535–36. Ground four, on the other hand, is a post-conviction-petition claim based on evidence *outside* the record. So Exhibit 51 is unrelated to the question before this Court—whether the Ohio court of appeals unreasonably rejected Flenner's ineffective-assistance claim based on the evidence *outside the record* that Flenner presented. *See* Rule 7 of the Rules Governing Section 2254 Cases (a court "may direct the parties to expand the record by submitting additional materials *relating to the petition*.") (emphasis added). Flenner's request to expand the record is therefore denied. *See, e.g.*, *Brown v. Rapelje*, No. 1:08-cv-151, 2010 WL 2490675, at *1 (W.D. Mich. June 16, 2010) (rejecting the petitioner's request to expand the record; "[a]ssuming, for the sake of argument only, that Petitioner can satisfy the requirements for expanding the record, the document Petitioner seeks to include in the record is not relevant to addressing the merits of his petition.").

*5.  Ground five is procedurally defaulted.*

In ground five, Flenner argues that his speedy trial rights were violated. Doc. 1, at 12. Ground five is procedurally defaulted. Because this claim is based on the trial court record, it should have been raised on direct appeal. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)). The Sixth Circuit "has held that this rule is regularly and consistently applied by Ohio courts as required by the four-part *Maupin* test." *Id*. Because Flenner didn't raise a speedy trial claim on direct appeal, his claim is procedurally defaulted. *See Buell*, 274 F.3d at 349.

In his Ohio Appellate Rule 26(B) application to reopen, Flenner argued that appellate counsel was ineffective for failing to raise, on direct appeal, a speedy trial violation. Doc. 7-2, at 426–27. But "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Davie*, 547 F.3d at 312.

Moreover, Flenner's Rule 26(B) application to reopen may not serve as cause to excuse his procedural default of his speedy trial claim because the Ohio court of appeals rejected as untimely his application. Doc. 7-2, at 451. So Flenner's ineffective-assistance-of-appellate-counsel claim is itself procedurally defaulted. *See Edwards*, 529 U.S. at 451–53 (2000) (ineffective

42

assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective-assistance-of-appellate-counsel claim is not itself procedurally defaulted and the court finds that appellate counsel was constitutionally ineffective); *Parker*, 543 F.3d at 861–62 (claims raised in a Rule 26(B) Application that the Ohio court of appeals rejected as untimely are procedurally defaulted); *Monzo v. Edwards*, 281 F.3d 568, 577–79 (6th Cir. 2002). Flenner also failed to appeal the Ohio court of appeals' decision to the Ohio Supreme Court, so he procedurally defaulted his ineffective-assistance-of-appellate-counsel claim in this way, too. *See O'Sullivan*, 526 U.S. at 845 (a petitioner must present a claim to the state appellate court and the state supreme court for discretionary review or it is procedurally defaulted).

Finally, Flenner's delayed application for reconsideration of the Ohio court of appeals' rejection of his untimely Rule 26(B) application, Doc. 7-2, at 455–56, was itself rejected as untimely, *id.* at 482–83. So this filing doesn't excuse the procedural default of any ineffective-assistance-of-appellate-counsel claim. Flenner contends that the court of appeals' finding that his application for reconsideration was time-barred was not "an adequate bar to the federal question." Doc. 20, at 5–6. He cites *State v. Bethel*, 192 N.E.3d 470 (Ohio 2022), Doc. 20, at 5, but, as explained above in ground three, *Bethel* does not save Flenner's application from procedural default.

43

**Conclusion**

For the reasons set forth above, I recommend that Flenner's Petition be denied.

Dated: December 3, 2024

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).